May it please the Court, my name is Jim Bopp. I'm attorney for the plaintiffs below. This case involves a First Amendment challenge to two provisions regulating the initiative process in Chula Vista. One is the natural person or elector requirement to be a proponent, and the second is the reveal-yourself requirement that provides that the identity of the proponents of the measure will be identified on the circulated version of the petition. Each of these are unconstitutional under the First Amendment because they first, as to the first provision, bans associations from being proponents of ballot measures, and secondly, as to the second, prohibits anonymous ballot measure speech. First, the Court has asked us to address the Nevada Commission on Ethics case, which upheld a law that required recusal of a legislator when they had a personal interest in the outcome of the legislation. In that case, the Court held that a legislator's vote is not protected by the First Amendment because a legislator's vote is a commitment of his proportionate share of the legislator's power to the passage of or defeat of a particular proposal. Counsel, doesn't the answer to these questions depend in part on what is the nature of the initiative process? And at least under the California Constitution, the initiative process is a legislative process. It's an action whereby voters, electors, are themselves acting as the legislature. So why shouldn't we analyze both of these questions the same way we would analyze them with respect to a member of the legislative assembly? Well, I think there's a proper way of doing that. There's really three steps. One is the proponent. And all they are doing is advocating that electors, which is the second step, sign a petition, which puts a measure on the ballot. Now, that is just like a legislator introducing a measure. Correct. And is it your view that in the legislative assembly, a legislator could be substituted by an organization? Or is it your position that they could be anonymous? Or don't they, isn't it permissible under the First Amendment to say that an individual legislator, John Doe, Jane Smith, be the proponent of legislation? Well, we are not talking about what electors do when they sign the petition. That is equivalent to a legislator introducing a bill. If enough people sign the petition, the bill goes on to the ballot. Well, but the introduction of a piece of legislation in the legislative assembly also is not the vote. I mean, that may very well fail. But when the person comes forward and says, I would like this to pass, isn't that the exact equivalent of an individual proponent saying, here's my suggested legislation. I want it to come to a vote through a process that is analogous to getting a piece of a bill. No, the first step, the proponents are advocating that the electors put a bill on the ballot. That's just like you and me going to the legislature and saying, hey, legislator, will you please introduce a bill. Well, that, I guess what I'm getting at is to me it seems not that people are petitioning the government, but in acting as a proponent, they are the government. They are legislators when they're acting in this way. No, the proponent is not a legislator. Because the proponent, he can't introduce a bill. He can't put a measure on the ballot. Only the electors can do that by enough of them signing a petition. Why isn't the proponent simply like the legislator who drops a bill in the hopper? He can't drop a bill in the hopper. The legislator, only the legislator can drop a bill in the hopper. And that is only the electors here by enough of them signing a petition can place a measure on the ballot. But you're skipping a step. You're skipping a step because it's the proponent who drops it in the hopper, and just like the legislator who hopes that the rules will allow it to come to the floor for a vote, the proponent hopes that enough electors will, other electors will sign so that it comes to a vote. With all due respect, I just don't think that that's the way to look at it. Isn't that how California law looks at it? No. Isn't that the question? No. California law doesn't look at it like that. There is nothing that a proponent can do to place a measure on the ballot. All a proponent can do is circulate a petition and ask electors to place it on the ballot. Is what you're saying now consistent with what the California Supreme Court said in Perry v. Brown about the special important role that a proponent plays as the manager and supervisor of the process? And that's true. And that's what the court held. But that is not analogous to what a legislator does, and they didn't purport to describe it that way. But what a legislator does is they can author a bill, and it can go on, you know, in many legislative assemblies, they can call it up for a vote. So we're not dealing with many, we're only dealing with California and how California law envisions this role. And until we understand how, what the rules are in California, we don't know what we're applying the federal Constitution to. Well, see, you know, the difference between the Nevada decision and Meyer is that Meyer said that the initiative, the process that an initiative goes through to get on the ballot is political speech. So we don't have a, you know, this isn't a novel question. It has already been declared by the court to be political speech. The act of a legislator voting is not political speech, but that is not what a proponent does. A proponent can't put anything on the ballot and can't vote for anything that is on the ballot unless they are an elector. So that's a different position. All a proponent is doing is lobbying. Yes, except that under the California Constitution, only an elector may be a proponent. No, may propose. And there's a problem, obviously, with that word having various uses. Isn't the normal rule of interpretation that the same word used in the same document in the same subject matter means the same thing? Yeah, and the word propose means occurs when a sufficient number of electors sign a petition, put it on the ballot. So when it says that an initiative petition must be signed by electors equal in number to a certain percentage, do you agree that those are individual, individual persons who are eligible to vote? Yeah, they're electors. And so it's your view that when the Constitution says that an elector is the one to put forth a petition, it means something different. No, it means that you sign a petition and it places it on the ballot. In other words, you're proposing it for a vote. The act of proposing it is by the signing of the petition. What the official proponents do is urge electors to do that. In other words, they're like a lobbyist. They're going to the legislature and say, please introduce a bill. Here's the bill, this is what we hope you introduce. We can't introduce a bill. In other words, we can't place it on the legislative calendar for a vote. We want you to. You have the authority. You're the electors. If enough of you sign the petition, it then goes on the ballot for a vote, and then the electors vote yes or no. So that is why the Supreme Court has said the proponents' activities, that is, the initiative process of placing something, see, there's that word again, of urging people, you know, electors to propose an initiative for a vote, is political speech. Well, at the same time, they say the vote of a legislator is not political speech. And that's because the act of urging electors to sign a petition is not the act of a legislator. It is the act of a lobbyist, a citizen. Let's take your point and say that it is political speech. Does that mean that once we qualify it as political speech, we can't agree with the state of California that only electors, natural persons who are registered to vote in this area, can be the proponents? And if so, why? Well, because, number one, this is a ballot access issue. They're limiting the access to the ballot, that is, to only measures that are proposed by electors. So that is subject to strict scrutiny. Associations are prohibited from proposing a measure. They have no access, zero access to the ballot. So that requires strict scrutiny. So what's the justification for... The justification that I thought was best put by Judge Benitez was the governmental informational interest, which is we like to know who's behind these measures. You can do that through reporting, through filing reports of who's spending the money. And of course, that's already provided for in other provisions of the law. Somebody that sets up an initiative committee or proponents are spending money, they have to report to the state of California. And that's available to the public. So all that reporting and disclosure is already available. So what you're saying is that if we apply strict scrutiny and recognize the compelling interest being the governmental informational interest, this program is not narrowly tailored, because that interest can be satisfied by means available, and this means is not necessary. That's true. And it's already being provided through the initiative. But counsel, I'm going to go back to Perry v. Brown, because it's clear from that case that the proponent of an initiative has a very special role to play under California law. As the representative of the initiative, who can represent it in court, who can withdraw it, and exclusively is the one who can withdraw it. And isn't that a very important kind of piece of information for voters to know when they are deciding whether to sign something, do I want this proponent to be my representative if this thing passes? They're going to be able to defend it in court, they can withdraw it. Isn't that a very important piece of information? I'm sorry, what is the important piece of information? To know who is the proponent, but when making the decision whether to sign, so that I'm looking at a piece of paper that says proposed, here's a piece of legislation, to know who is the person who is going to be the advocate in the public sphere for that, and who's going to be able to defend it. So we're talking about the reveal yourself provision now? Right. Okay. The problem there is, as the court has pointed out, this court in Heller and Winn, the U.S. Supreme Court in McIntyre and other cases, is that that information is being provided at the point of contact with the voter. That information, as the court said in Buckley, is otherwise available through the reports that are available, and so is this information. It is available from the state, because you have to file your notice of intention. It is available in the newspaper, because you're required to publish in the newspaper who the proponents are. And those have all been upheld, and we're not challenging those. But it's much different, as the court has repeatedly, and this court, said, when you're talking about the point of contact with the voter. That's when the privacy, the anonymity interest is high. It's just important for members of the public to have that information to know who is going to be the proponent. McIntyre said the opposite. Who is going to be the proponent for this initiative to present arguments in its favor or defend it in court in the way that I, the voter, am happy with. Well, with all due respect, McIntyre, Winn and Heller said the opposite. Said that this was the point in time in which the communication, you know, should be, needs to be under the control of the communicator. Not to be required to disclose information they don't want to provide. And that's because this information is available at least three different other places, and three other mechanisms, people can find out about it. Now, with all due respect, that's... Then that seems to take away from the privacy argument. If you have to publish it in the newspaper, it's not private. So I guess I have a hard time seeing why there is now this privacy interest in saying, even though I've now published it in the paper, I don't have to tell you today when I'm asking you actually to sign on to it. McIntyre dealt with that, too. In McIntyre, there were reports that were filed by people who circulate information about a referendum. And so the information about who, in fact, Mrs. McIntyre had put her name on some of the communications that she had done. It seems to me that under Perry, the role of the proponent is so important that it's quite different than a referendum. It's quite different than McIntyre. You are correct. It has important governmental effects, doesn't it? And what the Supreme Court said in Nevada is, quote, an expressive act remains so, despite it having a governmental effect. Well, governmental effect, you know, if we take your point, if we were to agree with you that it's not a legislative act, I think that would perhaps give a different cast to it. But if it's a legislative act, I think a lot of your argument falls away. Well, it's not a legislative act because there is nothing that the proponent can do that has legal effect in terms of the adoption of the measure. But it's a necessary step to the adoption of the measure. No, it's a mechanism provided for people to ask those who can propose by signing on a petition. Like the lobbyist. The lobbyist, the act can be dropped in the hopper without the lobbyist, but the initiative can't be started without the proponent. Well, that is true. It's a necessary legislative act. That is true. It may also have expressive political content, but it's a necessary legislative act. The lobbyist does not. That is true. I agree with that. But that doesn't change the character of what the proponent is doing. Because it's a procedure that is provided does not mean that it changes the nature of what their activities are. Their activities are expressive. They are advocating that electors sign a petition. And they are giving reasons why that should be done. Before you sit down, Mr. Bopp, tell me your best argument for claiming that associations can be proponents. Isn't that your... We have a discrimination among speakers, and that is an association may not be a proponent and thereby advocate that electors sign a petition. And you think there's no compelling governmental interest, applying strict scrutiny, saying we want to make sure that only real electors, not associations, not faceless persons, participate in the initiative process. They could require that the association be made up of electors. Well, then how does the elector remain anonymous if he has to list his... Well, he wouldn't. I suppose the government could investigate and confidentially find out if all the members of the association are electors. I mean, there are mechanisms to find that out, if that's a legal requirement. But if it's important that the... But, you know, I'm just not convinced of that point. In other words, they say the governmental interest is so that the proponent is an elector. Well, why does the proponent need to be an elector? Because the people who are voting want to make sure that the person has some skin in the game. Well, if they don't, if they know they're not an elector or if they don't know that they have skin in the game, they just don't sign the petition. You know, if it's somebody coming from the U.S. And of course they won't know that if it's anonymous. And they won't know that if it's anonymously circulated. Well, but they're not anonymously circulated. The names of the proponent is first publicly available at the city attorney's office with the notice of intention. And secondly, it's published in the newspapers. And then reports of their expenditures are filed with the state. Counsel, you're down to about a minute and a half in terms of your time. You may wish to reserve that. Thank you. We'll hear from the other side. Thank you, Your Honor. Charles Bird on behalf of the city defendants. Mr. Bird, how are you allocating time with counsel for the state? I would like to divide it as close as possibly to equal. But I'd like to divide equally with the state. Oh, equally, so ten minutes each. Yes, but I do understand that you have a total of 20 minutes for your side. And if our questions take you beyond your ten minutes, you're trespassing on the time of your co-counsel. He's not technically a co-counsel. If the panel is done with me in seven minutes, he gets 13. If the panel is done with me in 13 minutes, he gets seven. Very good. Could I ask the deputy to reset the clock to 20? We were spending time on administrative matters there. Go ahead, Mr. Bird. Thank you, Your Honor. I have the elector issue. The appellants want the federal government to compel the people of Chula Vista and of California to share part of their legislative power with the people of California and here also the people of the city of Chula Vista in determining their own form of government and specifically to reserve to themselves part of the legislative power. Mr. Bird, let's suppose that two or three of the people in Chula Vista really want to publish in GEON, but they're afraid of labor union retaliation, right? They can go as electors and make the petition, right? They can. Why can't they delegate that power to the Chula Vista citizens? They can't delegate that power any more than Assemblymember Jones can delegate to a lobbyist the power to take a bill in the California legislature to legislative council's office and say... Mr. Jones would be violating his oath of office, right? Mr. Jones would be violating his oath of office. That's collateral, I think. But now the elector doesn't take any oath of office. The electorate does not take an oath of office. So here's my point. There can be circumstances in which individuals fear retaliation, harassment, all sorts of things bad going against them, and they'll say, we really want to do this, but we don't want anybody to know that we're involved because we don't want paint bombs thrown on our house or we don't want our dogs killed or whatever, right? Your Honor, that's exactly the position that the unsuccessful signers of initiative petitions took in Doe v. Reed. Yes, so factually those people exist. In fact, some of them took Doe v. Reed to the U.S. Supreme Court from the state of Washington. And your position is that people just have to run those risks? That's what the Supreme Court said? Yes. I think there is a potential qualification in Doe v. Reed. I think that Doe v. Reed leaves open something that here is entirely theoretical, and that is in a particular case of people who signed petitions, they could make an as-applied challenge specific to a particular initiative, and they could ask the Supreme Court to do that. But here the facts are that these two electors, it was named, I can't recall, right, took a very public position. They took a very bright and open position as proponents, right? That is so, and that is so before, that is so with respect to their first petition, that is not before the court, but is certainly in the record. Where without raising any issues about whether an organization could sponsor, could be the official proponent for them, they filed that petition, and that petition was not accepted by the city clerk for reasons that have nothing to do with any constitutional challenge. So that's one of the reasons, although the complaint refers to this case as involving both facial and as-applied challenges, there's no basis for an as-applied challenge. Here, because there is nothing distinctive about any of these plaintiffs that would say they are personally, with respect to this initiative, entitled to special treatment. Scalia. Counsel, where does the Citizens United case factor in this argument? You heard a reference to it by Mr. Bopp. Bopp. I heard reference to it. I think it factors not at all. I think one of the reasons it factors in this case is because it's a case where the plaintiff is not the plaintiff. I shouldn't be quite so blunt as that. In fact, if there were discrimination against juror entities based on their entity status that went to core political speech, then the court would have to engage in a narrowly tailored compelling state interest argument. So in that sense, it does factor. I think we're not close to that, and that's why I say it doesn't. I actually... Scalia. Well, why don't you respond specifically to Mr. Bopp's use of that reference? Bopp. Well, what underlies all of Mr. Bopp's references, and this goes back to the briefs, is a position that the proponent, lowercase p, of the case, of an initiative, is an advocate. In our brief, we referred to the official proponent with a capital letter P. When I speak at the lectern, I can't distinguish the size of the first letter of a word I use. The state correctly refers to an official proponent. And an official proponent, at the stage that concerns the people in this case, does four things, and only four things, and not one of them is advocacy. There's the filing of the notice of intent across a counter in a clerk's office. There is taking that to a legal publication and having notice of the intent to pursue an initiative published. There's going back to the clerk's office with proof that that has been done, and then there is finally, if enough signatures have been gathered, walking into the clerk's office and handing those petitions over the counter to the clerk to be sounded. But your position is that the official proponent has the option, but by no means the necessity of becoming an advocate in that sense of proponent, in the gathering of signatures, and presumably they at least agree with it or they wouldn't be doing it, but they might or might not engage in any advocacy. Is that your point? That is exactly correct. The acts of the official proponent are not acts of advocacy. And I actually think the most important language that comes out of the Nevada ethics case is at the bottom of the page of the West's reporter, and then it bridges over to the next one. What page? This is at pages 2350 to 2351 of 131 Supreme Court. Okay. And that is a statement that non-symbolic conduct engaged in for an independently governmental purpose is not First Amendment expression. And what we have here at the stage that these plaintiffs are complaining about is non-symbolic conduct, that it is governmental conduct, that it is conduct that has legal effect, and it is engaged in for a governmental function. And that governmental function as to the first three is to get to the point that electors can sign, and as to the final one is to activate the process by which signatures are counted. Just part of the notice of intention, finally, also a 500-word summary of the effect of the proposal. Yes, it is. Do you call that advocacy? Writing that is advocacy. There is no question that there is an element of expression involved in that part of it. Putting those 500 words through the first three steps of that process, which is the only point at which they are relevant, is still not an act of advocacy. That's correct. And you don't think that part of that description will be, it's a wonderful thing? Of course it will be, it's a wonderful thing. The question is, in the procedural acts undertaken by the official proponent, is the fact that language, does the fact that language is involved make it core political speech? So the legislative analogy would be someone who proposes a law that has a statement of purpose that says this will make life better for everyone, and it's in favor of motherhood and apple pie, and here are the operative sections. I would say something around a third of the bills introduced in the California legislature contain an uncodified declaration of intent as Section 1, which explains why it's such a great idea. I don't see this as being significantly different from a constitutional standpoint. So the simple answer to Your Honor's question is yes. Counsel, you're down to about 10 minutes, just as a reminder. Thank you. Let me see if, I would want to say one thing in response to Judge Bea's question about the content. And that is, we have taken two positions. And one is that there is simply not a First Amendment issue here, because these procedural acts are official acts of governmental significance and nothing else. It may well be that the less controversial way to decide this case is to say, we assume, without deciding, that the content gives, that the fact that language is involved, gives it some impressive conduct, in which case the court should find itself within the paradigm of Burdick v. Taccucci and Preet v. Bradbury, where this is a regulation of the electoral process, both the part that we have been talking about and the part that Judge Graber raised with Mr. Bopp at the podium of what happens if it qualifies for the ballot and the whole process that the proponent is involved in thereafter. And under those circumstances, the, a reasonable governmental issue, interest is sufficient. And I take that back all the way to the founding interest in the right of the people of Chula Vista and California to govern themselves and to not share elements of that governance with juror entities. With that, I will end with a very quick anecdote that my co-counsel or counsel from the state probably doesn't know, and that is, the mayor of another city in San Diego County, that is the city of San Diego, and it made a huge difference which recall petition one signed, because one was by people who really wanted to recall a mayor and the other was by a stalking horse. So the question of whose name is on a petition can make a huge difference. With that, I would like to let Mr. Waters have the remainder of the time. Thank you, counsel. Mr. Waters. May it please the Court. My name is George Waters. I represent the State of California. We intervened in this case as a defendant for one reason, and that is to defend the constitutionality of the three statutes at issue here. I'd like to begin real briefly with saying that there were three things that my opposing counsel said which I think are just plain wrong, and I want to just tell you, to begin there. One is, I believe he said that the initiative process equals political speech, and there are cases that have held that. I believe that's not true. There are cases that have held that aspects of the initiative process are protected by the First Amendment. One is Meyer v. Grant, which decided that a Colorado statute which prevented initiative circulators from using paid circulators, that that was unconstitutional. There was a First Amendment issue there, but the reason for that was because it squeezed the legislative process, that certain people who did not have money to pay circulators, because their proposal might be unpopular, that they could not get it on the ballot. So the theory behind Meyer v. Grant is that you're squeezing the range of ideas. There's a content element there. The other one is Buckley, which I believe is also from Colorado, which held that circulators, I believe Colorado required circulators, if I were circulating, I would have to have a badge on my lapel saying my name is George Waters. Again, the Court said that because there might be trouble at the point of impact there, that there, for example the point of voter contact, isn't that right? Yes, right. But the whole point is that what these two cases decided was that the regulations, the specific regulations that issued there would constrict the legislative process. Certain unpopular ideas might not be able to reach the electorate. And I think one thing you can say about California that is not true here. I won't go into any lengthy description of that. There's an extensive document in the record which has all the municipal initiatives for the last two years in it, but none of that is true. It's not true in California. And on the same line, my opposing counsel said that the effect of these regulations is to limit access to the ballot. That is certainly not true of ideas. Absolutely not true of ideas. California has the most active and open municipal initiative system in the country. There was also the idea that somehow that the reporting process, and there is extensive reporting regulations for people who contribute money to initiatives, that the reporting process might suffice for not having the name of a proponent on the initiative petition. And I just want to say that that is a puzzling statement here in terms of a corporation, because the ballot measure committee here is named Chula Vista Citizens for Jobs and Contractors PAC and Associated General Contractors PAC to promote fair competition. I believe that that is not a good, using names of ballot measure committees is not going to convey information. So with that, let me turn to an issue that's come up before. The state of California's position is that... Are you serious on that? The ABC proposal does not convey the idea that contractors who don't have a ballot measure committee can have union contracts are behind the policy? No, no, it does. But I don't think... It absolutely does. I agree with that. But, I mean, my point is that what is that entity? A ballot measure committee is made up for an election. So, I mean, I don't think that tells you much about... I think showing that the Association of Building Contractors of Southern California is behind a ballot measure gives you a great deal more information than saying Mr. Breitfelder is behind it. Well, I think, actually, I think the record in this case... I want to respectfully disagree with you on that. There is a very vivid record in this case about the two individual plaintiffs here, Mr. Breitfelder and Mrs. Kneebone, who were, in the context of this election, the dream proponents. They were on YouTube. They were on public TV. They were, as they put it in their own depositions, the dream proponents. They were the face of Proposition G. So as a general proposition, I think I would agree with you, Your Honor, that there may be circumstances where saying a contractor's organization is behind something would convey more information than an individual. I think that's not true here. I mean, it's hard to imagine a record where the two individual proponents were more active, to their credit. This is not a criticism. They were excellent proponents, and they won. But they were the face of Proposition G in Chula Vista, and I think that's clear in the record. But to get to the State of California's position here is that we are in the realm of regulating the legislative process here, and that the First Amendment does not apply to these acts, for the same reasons that I believe have come up earlier, and that is that I believe that Kerrigan stands for the proposition that there are certain legislative procedures that do not pose First Amendment issues, and I believe we would put these two in that category. And I think, in light of what the initiative process is like, if we were to apply the First Amendment full to the initiative process, there are statutes, I think a large number of statutes would fall, to the extent that the initiative petition itself is compelled speech. There's the title and summary. I mean, that has to be there. The format is mandatory. You just can't do your own initiative petition. It is heavily regulated. Dr. Terri Manolio Council, I have one question that nobody really has talked about, and it may be completely off the mark, but it's something that I've been thinking about. The First Amendment was proposed by the two individuals, and as I understand it, it was in fact enacted. And I'm wondering if that makes this entire exercise moot. Well, I mean, to be candid, I hope not, Your Honor. The State of California got involved here to defend these statutes, but I believe the record is that Mr. Breitfelder will never propose, he's been active in politics, and I believe his statement, either in his deposition, it is in the record, it's in my brief, is that he will never again be a proponent for an initiative because he has to divulge his identity on the face of an initiative petition. So I think that's, and as for the And did he also say that he would otherwise intend to do so? I believe that is either explicit or implicit. Well, it's an important question, because if he just says I'm sick of this process, I don't want to do it anymore, it still doesn't necessarily establish that he has an ongoing interest. I agree. I will have to go back and look more deeply at that. But I believe his statement, the one thing that I can say definitely, Your Honor, is that he has said that he has been active in initiatives in the past and he will not do it in the future because he has to be able to put his name on an initiative petition. Okay. That's probably enough. Counsel, let me ask you one last question. I know your time is running short, but what do we do with the Ninth Circuit decision in Heller, ACLU v. Heller, where we specifically focus on the point of contact name disclosure? Well, I think, let me admit to begin with that I'm not familiar with the facts of Heller as I speak here. It's in my brief. There are a number of cases there, but on the point of contact... Well, I'll just say the general state of the law in the Ninth Circuit is that we tend to protect anonymity. It's a very, very important value. I understand that, and I understand that there was protectmarriage.com was in this court a month ago, where there are significant anonymity issues having to do with the initiative process there. But I think on the point of contact, the issue is that this actually came up in the district court in one of the two or three hearings we had, and I think that there is no deterrent to, I mean, if I'm circulating this initiative petition, my name is not on it. The names on it are Larry Breitfelder and Lori Nebo. I mean, it's not like there's going to be blowback to me at the point of... I think there is a distinguishing feature between this and other cases that deal with the point of contact, and in those cases, the issue was that the circulators might be deterred from circulating ideas because they would be the focus of anonymity. And they, unlike the official proponents, don't play the kind of governmental role that Mr. Byrd was discussing. They are not the government actors in this. They are protected by the ROMA cases, which the common theme of the circulation cases is that if there is potential blowback to the circulators, that you shrink the universe of ideas, and that is just not the case here. And as a broad proposition, Your Honor, I just have to say, legislation is by definition a public process. I mean, I just, I think that at the core, once you enter into the legislative arena, and here you have to have one person in the city of Chula Vista do that, once you're in there, I mean, you are, it is public, and I think that, you know, that is part of the process. It's the same way with Senator Leno introduces a bill. It's his bill. People know who it is. So I think that the legislative process, there are aspects of it that are almost by definition public, and this is one of them. Very well, counsel, thank you very much. We thank you. We gave you additional time, and we'll be a little liberal with Mr. Raboff as well.  First, regarding the communicative provisions that the proponents have the privilege, unique privilege, exclusive privilege of doing, first you identified the 500-word statement that is in the notice of intention that is published, not only in the newspaper, but also is published in the petition itself. So it's handed to the voter, 500 words, quote, setting forth the reasons for the petition. Obviously that is intended to be an advocacy piece. Second, section 9282 also gives the proponent the privileged position of proposing a 300-word statement that it will be published in the sample ballot that is circulated to all the voters in Chula Vista prior to the election. So what we have is two communications. Beyond the petition itself, which the courts have said the initiative petition itself is a communicative act, beyond that we have two statements that proponents get the privilege exclusively of doing. This takes us right to Citizens United. What is the justification for saying we can only limit it to an elector, we can't have an association making these statements? That seems to go directly against the... Well, it can make all the statements it wants, it just can't be an official proponent. I'd like to make these privileged communications. I'd like your take on whether this dispute is mooted by the fact that the initiative in question is a communicative act. The petition was actually inactive and is over with. Yes. On two grounds. Yes, excuse me, no, it is not moot on two grounds. First, in the Wolfson case, we have allegations here, just as we had there, of an intention to do this in the future, both by the individuals and by the associations. And secondly, they are asking for expungement of the filed petition, which had to have the names of the individuals on it. They want those records to be expunged and to replace it with the actual proponents of this. I mean, this law, claiming to provide information good for the voters, requires that a false proponent be put on the petition, i.e., two other proponents. So it's two individuals who aren't the people that are funding this, that aren't the people that came up with this idea. Well, being an official proponent has nothing to do with funding, and it has nothing to do with creativity. It has to do with being willing to introduce it, any more than a legislator necessarily came up with the idea that resulted in the legislation in the hopper, or any more than that legislator is paying for anything. Okay, well, if it's meaningless who introduces it, then what's the informational interest of the voters? I didn't say it was meaningless. I was asking why there is a, why that makes it non-legislative, just because somebody isn't the one paying for it, why that makes it false. These, the associations here came up with the idea of this initiative. It wasn't these two people. But the two people were not coerced, as I understand the record. They were perfectly willing to be the official proponents. Is that true? Well, of course, of course. Well, then what's false about their being an official proponent? In the context of the voter information argument that it gives the voter information about who is behind the petition, this law is requiring false people to be identified as behind the petition, not the real proponents, which are the two associations here. Okay, in addition as to the blowback argument, well, of course, the person can see the name here and say, hey, you're circulating this petition for this terrible person who's anti-union. So of course it can cause blowback, just like the name George Walters could cause doubtful, but could cause blowback. So could putting the, you know, having on the petition the name of the proponent. Thank you, counsel. I think your time has now expired.
judges: O'scannlain, Graber, Bea